# Appeal of Margaret J. McGeary, Admrx. of H. S. McGeary, Deceased.

---

## Re Estate of A. L. McGeary, Deceased.

Where an administrator in discharging his trust sold certain stocks belonging to the estate, but appropriated the money to his own use, and the

Cited in Kuhlman's Estate, 178 Pa. 43, 48, 35 Atl. 918; Ike's Estate, 200 Pa. 203, 49 Atl. 791.

NOTE.—Executors and administrators are chargeable with any profits arising from the use of the funds of the estate (Norris's Appeal, 71 Pa. 106) ; or from purchases of claims against the estate (Woods v. Irwin, 163 Pa. 413, 30 Atl. 232; Hacker's Estate, 7 Pa. Co. Ct. 202; *Re* Heager, 15 Serg. & R. 65) ; or from sales to the estate (De Haven's Estate, 15 Phila. 595). But where the heirs ask for a surcharge at the appraised value, the executor is treated as the owner, and he is chargeable only with the appraised value and interest, and not for the profits. Stewart's Appeal, 110 Pa. 410, 6 Atl. 321. If no profits have been made, and the defendant mingles the estate funds with his own, he is chargeable with interest. Norris's Appeal, 71 Pa. 106; Gilbert's Appeal, 78 Pa. 266.

profits realized from such use are not ascertained, he will be charged with 6 per cent interest to the date of the decree. Upon shares transferred upon the books of the company, but not reported as sold, and as to which his conduct creates a presumption that they remain under his control, he will be charged with all dividends paid by the company up to the termination of his trust, and with the market value of the stock at that time.

Where an administrator held the written acknowledgment of the decedent, that 40 shares of the stock standing in his name belonged to such administrator, although the fact appears that only 30 shares were in the decedent's name at the date of the acknowledgment, the act of the administratrix (who preceded the administrator in the trust and supposed she would inherit the entire personal estate), in crediting him with the 40 shares of stock, was approved.

A claim asserted against an estate, that certain mortgages to the decedent were partnership property, coupled with an admission that certain mortgages, held by the claimant for a less amount, were also held in partnership with the decedent, is not a statement against the interest of the claimant; and the entire statement will be rejected.

A payment made at the request of the decedent, to the widow, by one who afterwards became administrator, entitles him to credit as administrator on his accounts, although at the time the payment was made he did not know that she was a legatee.

(Argued November 2, 1886.  Decided November 15, 1886.)

October Term, 1886, No. 134½, before GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.  Appeal from a decree of the Orphans' Court of Allegheny County dismissing exceptions to an auditor's report in the matter of auditing the accounts of H. S. McGeary, admr. *d. b. n.* of A. L. McGeary, deceased.  Affirmed.

The facts are set forth in the following statement prefatory to the opinion of the court below:

Abbott L. McGeary died on the 21st day of November, 1880. His mother, Nancy McGeary, was appointed administratrix of his estate, and she having died on the 28th day of March, 1881, his brother, H. S. McGeary, was appointed administrator *d. b. n.* He died on the 15th day of June, 1885, and the will of the decedent having been produced and probated May 22, 1884, A. M. Imbrie, Esq., was subsequently appointed administrator *d. b. n. c. t. a.*

In the inventory filed by Mrs. McGeary, which was adopted by H. S. McGeary, there is included 412 8/10 shares of stock of

the Allegheny Gas Company, appraised at $16,000. The decedent owned 452 shares of stock in this company. H. S. McGeary, as administrator, at various times, between June 9, 1882, and February 5, 1883, transferred, on the books of the company, 365 shares of this stock, leaving 87 remaining. He received dividends as follows: May 17, 1881, on 452 shares, $452; November 15, on 452 shares, $452; May 15, 1882, on 452 shares, $452; November 16, on 262 shares, $262; May 14, 1883, on 87 shares, $87; November 19, on 87 shares, $87; May 15, 1884, on 87 shares, $87; on November 24, on 87 shares, $78.30; May 15, 1885, on 87 shares, $435, the latter including a special dividend of $4.00 per share. He filed an account on the 21st of April, 1884, in which he charged himself, *inter alia*, with the amount of the inventory filed by Mrs. McGeary, less an error of $535; with three dividends of $412 each, being on 412 shares of the Allegheny Gas Company stock; with three of $312 each, being on 312 shares, and as of February 17, 1882, with gain in sale of 100 shares of said stock, $204, and returned 312 shares as unsold.

There is also included in the inventory 36 shares of Central Transportation stock appraised at $1,600. As shown by the books of the company the decedent purchased stock as follows: May 15, 1874, 30 shares; March 16, 1877, 100 shares; May 26, 1879, 50 shares; October 25, 1880, 26 shares, making 206 in all; and sold May 26, 1879, the 100 shares, purchased March 16, 1877, and on June 3, 1880, the 30 shares purchased May 15, 1874, leaving 76 shares standing in his name at his death, and which were sold in May, 1884, by H. S. McGeary, as administrator. For the purpose of showing that but 36 shares of this stock belonged to the decedent, the following paper, executed by him, was offered in evidence.

Pittsburgh, December 3, 1875.

Due Henry S. McGeary forty (40) shares of Central Transportation Company, which I promise to transfer on demand, said stock having been paid for by him.

Abbott L. McGeary.

The inventory also contains the following item: "One half interest in the following mortgages, etc., held jointly with H. S. McGeary;" and following this is a list of mortgages and notes,

one half of which are appraised as the property of the decedent. All of these stand in the name of A. L. McGeary alone, except the McGibney mortgage for $300, McManus for $123, Hawser, $250, and McKnight, $300, which are in the name of H. S. McGeary.

In the account filed by H. S. McGeary's administratrix credit is claimed, *inter alia,* for amounts claimed to be due by A. L. McGeary, shown by papers signed by him, to H. S. McGeary, as follows: on due bill, dated January 13, 1876, $150, payable out of the Connolly judgment; on note dated May 18, 1876, payable one year after date, $2,740; on paper dated March 26, 1877, $1,018.75, the value of 50 shares of Central Transportation stock called for in it, and $150, with interest, one half of the G. B. Brown note; on due bill, dated March 28, 1877, $3,-162.50; on one dated June 12, 1877, $1,000; on paper dated June 11, 1878, the proceeds of $2,000 note of John Brown; on note dated November 9, 1880, at thirty days, $500; on note dated October 7, 1880, at thirty days, $500; on note dated June 23, 1880, at thirty days, $500, and for $85 on three receipts for moneys alleged to have been collected for H. S. McGeary; and for receipt in favor of M. H. McGeary for $1,900, used in the purchase of Reading Railroad stock, dated May 15, 1880. This stock was sold in decedent's lifetime; and the Connolly judgment and Brown note have not been collected.

Credit is also claimed for $1,750 paid Mrs. Kate McGeary, who is the sole legatee of the decedent; $500 of this amount was paid before H. S. McGeary became administrator and the balance subsequently. It was not known by him when these payments were made that Mrs. McGeary was legatee or interested in the estate as next of kin; and they were made in pursuance of instructions given to him by A. L. McGeary on his death bed. The present administrator, A. M. Imbrie, Esq., and Kate McGeary, sole legatee under the decedent's will, file exceptions to these accounts and claim, *inter alia,* as follows: 1, that the accountant should be charged with all the dividends which accrued on the stock which the decedent owned in the Allegheny Gas Company until the termination of his trusteeship; 2, with the value of the 40 shares of Central Transportation Company not included in inventory and the dividends thereon; 3, with the whole amount of the mortgages and notes standing in the name of A. L. McGeary; 4, that the accountant is not entitled

to the credits claimed for the alleged indebtedness of A. L. McGeary to H. S. McGeary, nor for the $1,750 paid Kate McGeary.

The following is the opinion of the court below, OVER, A. J.:

1. As the trust of the administrator was to convert the decedent's effects into money and distribute the proceeds to creditors and next of kin or legatees, he was in the line of his duty in converting the 100 shares of gas stock returned as sold in his account. But it is evident that he used the proceeds of the sale for his own purposes. The penalty the law imposes for this breach of the trust, however, is either the profits realized from the use of the money or 6 per cent interest thereon. It does not appear what profits, if any, were realized; and he is therefore to be charged with 6 per cent interest on the amount realized from the date of the sale to that of the decree. When he filed his account he had transferred on the books of the company all of the stock except 87 shares. But as he did not charge himself with the proceeds of any sales, except the 100 shares, and returned the remainder as unsold, the presumption is the transfers were not absolute and that he still controlled it and received the benefit of the dividends which subsequently accrued. It also appears from the testimony of the cashier of the bank in which he deposited that, as administrator, he had made transfers to it of some of the stock to secure personal loans.

It was not necessary for the purposes of the trust to borrow money, and the probabilities are that all of the transfers except that of the 100 shares were of the character of those made to the bank. They were made, then, in breach of the trust, and would not vest a good title to the stock in a vendee having knowledge of the facts; and as it does not appear that the title of the trust was ever legally devested, at least as to the administrator, it is still in the trust. It seems reasonable, therefore, that he should be held liable for the dividends which accrued on the stock until the termination of his trusteeship by his death. And as to that which is not accounted for he must also be charged with its market value, at that time $40 per share.

2. When the decedent executed the paper of December 3, 1875, referring to the 40 shares of stock in the Central Transportation Company, there were only 30 shares standing on its books in his name; and as appears from them his next purchase was on

March 16, 1877, of 100 shares, and that these 130 shares were sold by him prior to his death. Exceptants argue that the inference from these facts is that in his lifetime he accounted to H. S. McGeary for the stocks referred to in the paper, and that its possession by him is accounted for by the fact that he was administrator of the decedent. He was not, however, when the appraisement was made; and as there were 76 shares standing in the name of the decedent then, and but 36 inventoried, it is evident that the paper was in his possession then, and that the 40 shares were conceded by the administratrix to belong to him. It was then supposed that she would inherit, as mother of the decedent, the whole of his personalty; and on that supposition the concession was against her interest and evidently bona fide. The facts relied on by the exceptants are not sufficient to overcome the prima facie case made out for the accountant by the paper, and he should not, therefore, be charged with these 40 shares of stock.

3. The claim of the exceptants that the accountant must be charged with the whole amount of the mortgages and notes standing in the name of the decedent must be sustained. It is alleged that he and the administrator (H. S. McGeary) were partners in these transactions, and that one half of these mortgages and notes only belongs to the estate. While there is some evidence showing that they were partners in the brokerage business, there is no competent evidence that these securities belonged to them as such. But the administrator should not also be charged with the amount of the securities inventoried which stand in his name. The exceptants contend, as he has charged himself with them, that he is estopped from showing that the title is in him. Under the circumstances of the case this position is not well taken.

When the inventory was made, the appraisers received their information as to these securities from M. H. McGeary, attorney of the administratrix, and H. S. McGeary. The latter then claimed that these securities standing in the decedent's and his name belonged to them jointly, and they were so inventoried. The title of the estate to one half of those in his name then rests upon this declaration. It applied, however, to all of the securities. But the exceptants object to it so far as it relates to those standing in the decedent's name, as not being against his interest, and therefore incompetent. As those in the name of

the decedent exceed in amount those in H. S. McGeary's name, the declaration was not against his interest and would be incompetent to establish his title. But as it referred to all the securities, if admitted as evidence or rejected, it must be as to all. And as it is objected to, and the objection seems well founded, it must be rejected.

The inventory then is set aside as to these items, and the liability of the accountant as to them is to be determined by the evidence adduced at the audit. He therefore is to receive credit for the amount of the securities inventoried standing in his name and the interest charged thereon, as improper charges.

4. The paper upon which the credit of $1,900 is claimed as of May 15, 1880, on account of money used in purchasing Reading Railroad stock, shows that the transaction was with M. H., and not H. S., McGeary, and it cannot therefore be allowed; neither can those claimed for moneys payable out of the Connolly judgment and John Brown note, as they have not been collected. Suit was brought on the G. B. Brown note by H. S. McGeary as administrator; he defalked a claim against the estate and a balance was certified in his favor. This note then was used to pay the debts of the estate, and as one half of it belonged to H. S. McGeary the credit claimed for it must be allowed.

Most of the other papers offered in evidence upon which credits are claimed, as debts due by the decedent, antedate his death from three to four years; and a majority of the transactions were of such a nature that the probabilities are they were settled in his lifetime. All of these papers were found in a wallet containing other valuable papers of H. S. McGeary, in his safe after his death. But he may have come into possession of all, except the note for $500, dated November 9, 1880, which matured after decedent's death, as his administrator. This possibility weakens the prima facie case made out by their possession. It seems, also, from the statements made by H. S. McGeary under oath, and the account filed by him, that the decedent was only indebted to him on a note for $250. In an answer filed on April 2, 1884, to a petition of a creditor, praying that additional security be required of him as administrator, he averred "that there are no creditors of said estate; all the debts having long since been paid in full." On the 21st of the same month he filed his account, and the only debt for which he claims credit as due him is upon a note for $250. If the de-

cedent had been indebted to him as now claimed, according to his statement under oath the indebtedness had been paid before the account was filed and he certainly would have claimed credit for it as well as for the $250 note. The account also was regularly called on the audit list for June, 1884, and no claim was made or presented by H. S. McGeary as a creditor. The probabilities are that the decedent was an accommodation maker of the note which matured after his death. It should also be remarked in regard to the claim for the value of the 50 shares of Central Transportation stock referred to in the paper dated March 26, 1877, that when the inventory was made out H. S. McGeary evidently claimed but 40 shares of the stock standing in the decedent's name, and it was conceded him, which is persuasive evidence that the 50 shares had been accounted for. The weight of the evidence seems to be against the accountant, as to the credits claimed for indebtedness due by the decedent to H. S. McGeary, except as to the G. B. Brown note; and with that exception they are not allowed.

It is objected to the allowance of the credit of $1,750 claimed for moneys paid Mrs. Kate McGeary, that $——— was paid before H. S. McGeary became administrator, and that none of it was paid to her as legatee. This objection does not seem well founded. It was paid in pursuance of the instructions of the decedent given upon his death bed, and H. S. McGeary was not a volunteer, and it was not a gratuity from him. The payments made before he became administrator should be treated as an advancement to her by the decedent's request, on account of her legacy; it is not material that it was not known she was a legatee when they were made; and as she received the money from H. S. McGeary, it would be highly inequitable not to allow credit for it.

It is further objected, however, as the distribution to be made at this audit is not to creditors and legatees, but to the present administrator, that the credit cannot be allowed. This objection would be well taken if the estate were insolvent; but if it be solvent, there is no good reason why the credit should not be allowed, as all the parties interested are represented, and it would be an unnecessary hardship to compel the accountant to pay this amount to the present administrator if it would eventually be refunded. It is very probable that the estate is solvent, but as that can only be judicially determined upon the audit of

the account of the present administrator, distribution of this amount will be suspended until then, when such a decree can be made as to it as may be proper.

The following exceptions were filed by Margaret J. McGeary, administratrix of the estate of Henry S. McGeary, deceased:

1. The judge erred in not finding that the three receipts, to wit: Exhibits Nos. 3, 6, 7, issued by A. L. McGeary for moneys owing to H. S. McGeary, came into the possession of H. S. McGeary, by redemption, and were, therefore, proper vouchers for a claim against the estate of said A. L. McGeary for the amounts therein stated to have been received by him.

2. The judge erred in disallowing the claim of credit for the amount of a certain due bill, dated May 14, 1880, to wit: Exhibit No. 5, made by A. L. McGeary to Marshall H. McGeary for $1,900, the same being found among the valuable papers of H. S. McGeary after his death, and such possession presumed to have been brought about by redemption for its full face in the performance of his legal duty as administrator, and therefore a proper credit.

3. The judge erred in disallowing credit for the amount of that certain promissory note for $500, to wit: Exhibit No. 1, bearing date November 9, 1880, made by A. L. McGeary to the order of H. S. McGeary, paid by H. S. McGeary after the death of the maker, found among the bank checks, etc., returned by the bank as paid out of the account of said H. S. McGeary, but said package not opened until after his death, being a renewal of a note for the same amount dated October 7, 1880, for which original note H. S. had given his check to A. L. for $500, which check has also been disallowed as a payment to A. L.

4. That the judge erred in impeaching the legal presumption that the obligations of A. L. McGeary, found in the possession of H. S. McGeary, were the true and lawful papers of H. S. McGeary, but the introduction of inferences founded upon alleged laches of H. S. McGeary, in the face of evidence tending to show that the partial nature of his account was in his mind, and that his attention thereto was interfered with by the pending "will" trial, and that he had spoken to his counsel about remedying the omissions therein.

5. That the judge erred in finding that the evidences of indebtedness of A. L. McGeary to H. S. McGeary came into the possession of the latter through his being the administrator of the former.

6. That the judge erred in finding against the legal presumption that attached to the evidences of indebtedness exhibited by accountant, and in setting up inferences to overturn the rules of law pertinent thereto.

7. That the judge erred in not allowing the following claims of credit, to wit: Exhibits 1, 3, 4, 5, 6, 7, 8, 9, 12, cash items, etc., for the reasons set out in exceptions 4, 5, 6, 8, etc.

8. That the judge erred in holding that the legal presumption in favor of the integrity of the claims now made by H. S. McGeary's estate was overborne by his omission to promptly assert his rights without granting to him the effect on an ordinary mind of the well-known surroundings of the case, to wit: at the time of the filing of answer to citation, and at the time of filing the account, H. S. McGeary and his brothers were the only known parties in interest, and on down to the trial of the "*devisavit vel non*," he ought to have the benefit of an honest belief that so desperate a case would not be legally sanctioned; and consequently such laches as he has been guilty of ought to be charged against him with great allowance, and if these matters were sufficient to throw a man of ordinary caliber off his guard and cause him to feel secure in his position, the legal presumptions surrounding the case ought to prevail.

9. That the judge erred in not finding that the papers which are the foundation of the claim of H. S. McGeary's estate have been supported by sufficient direct and circumstantial evidence to maintain their prima facie integrity, in this, to wit: (a) They were found together among the financial papers of decedent after his death; (b) when the inventory of Abbott L. McGeary's estate was made up at the request of the mother and first administratrix, these were not among his papers; (c) when said inventory was made up Marshall McGeary was attorney of said administratrix and had an equal interest with Harry in having the same correctly stated; (d) the said Marshall had possession of the papers of said Abbott as shown in the testimony; (e) that said Marshall continued as such attorney when Harry succeeded his mother as administrator; (f) that these papers were not brought before the appraisers; (g) that Marshall, by his writ-

ing, dated the day of filing the account, for some potent reason, known to him, but only to be surmised by us, acquits Harry of any claim by him for the large part of the estate; (h) that the papers bear no marks of cancelation as is usual when business men redeem their obligations; (i) Marshall and Harry had no knowledge that any other but themselves were concerned when the answer and account were filed; (j) they understood each other and knew then of no one who could interfere. They were not soothsayers, and visions of the future were not vouchsafed; (k) that Harry, after he saw that if the will was established his settlement with Marshall was a vain thing, spoke to his counsel of the account and told him that his claim had not been put in, and agreed to bring around his papers to his attorney's office and have a correction applied for.

Before this was attended to the trial came on, and at its termination the widow and orphans were left to assert, unaided, the righteousness of the claim.

10. That the judge erred in using an isolated quotation from the answer of Harry to the citation, to wit: "That there are no creditors of said estate, all the debts having long since been paid in full," without the context of the then surroundings which were that he and his brother owned the estate, that outside parties having claims were settled with, and there was nothing further but a family settlement to close up the whole matter.

11. That the judge erred in not allowing credit for that part of "Exhibit No. 9" which recites that 50 shares of Central Transportation Company stock were due Harry, as against the legal presumption of the case.

12. That the judge erred in charging interest on the items of the Allegheny Gas stock sold by Harry, as administrator of Abbott, and for dividends he never received—the evidence on that point, to wit: Moore's testimony, not establishing the position.

13. That the judge erred in charging interest on any matters after the death of H. S. McGeary; the exceptant has not been in default and has had no profit or advantage therefrom.

After argument on the exceptions the court, OVER, A. J., delivered the following opinion:

The note for $500 which matured after decedent's death was a renewal of a former note for that amount, the proceeds of

which were received by him; and the auditing judge erred in finding that the probabilities were that the decedent was an accommodation maker. This note, however, was charged up to H. S. McGeary's account by the bank a few days prior to the decedent's death, and the weight of the evidence indicates that he had been paid by the decedent.

It is argued by counsel for the accountant that too much weight is given to H. S. McGeary's averment in his answer to the petition referred to in the opinion of the auditing judge; as it was then supposed that he and his brother were the only persons interested in the estate and they intended to make a family settlement. The answer to this, however, is that he filed his account after this answer, in which he claimed credit for a note of $250 made by the decedent payable to his order, and there is no apparent reason, if the decedent was indebted to him as now claimed, why he should not have claimed credit also for such indebtedness. The declarations of H. S. McGeary to his counsel, to the effect that he had other claims for which he had not claimed credit in his account, were made when the will contest was pending, and after it had been admitted to probate by the register; and not being against his interest are clearly not competent to overcome his prior declarations under oath. They were also very indefinite, and did not specify the claims omitted. It may be that injustice is done the estate of H. S. McGeary by the decree, but the questions must be determined upon the weight of evidence and not upon conjectures. It was the duty of his administratrix to claim credits on the papers, as she had no knowledge that they were not proper, and under all the circumstances of the case accountant's commissions and attorney's fees should be allowed.

The application for an issue was not made until after the decree of the auditing judge had been made, and was clearly too late.

The assignments of error specified the action of the court:

1. In not sustaining the appellant's exception upon matters embraced in the auditing of the account of the estate in this case.

2. In allowing interest on various items of the estate reduced to money and in the hands of the administrator, without giving him one year's discretionary power over it, free of interest, as allowed by law.

3. In calculating interest on the whole estate without regard to the fact that the nature of the trust bringing about the need of interest was changed and brought on him after the time was past for earning interest and without any legal or constructive notice that he, the accountant, would or should be required to make the estate earn interest in this manner.

4. In not sustaining the appellant's exceptions to the audit in this estate; in refusing to correct the accountant's account and allow the accountant credit for vouchers Nos. 1–12, as offered in evidence and claimed by the accountant.

*A. C. Patterson,* for appellant.—The court below properly defined the duties of administrators to be a trust, "to convert the decedent's effects into money and distribute the proceeds to creditor and next of kin or legatee." But in this case the first cause of complaint is that the court below denied in part that proper latitude for the exercise of that discretion needed in the performance of his official trust duties which the law intended should be granted to him to rightfully perform them.

The act of February 24, 1834, § 38 (P. L. 80), allows all administrators one year's discretionary power over the goods of the estate held by them. This act of 1834 operated like an amendment to act of March 29, 1832, § 17 (P. L. 193), which exonerated administrators from payment of interest for moneys officially in their hands when their accounts are or ought to be settled and adjusted. "No executor or administrator shall be liable to pay interest but for the surplusage of the estate remaining in his hands or power when his accounts are or ought to be settled and adjusted in the register's office: *Provided,* That nothing herein contained shall be construed to exempt an executor or administrator from liability to pay interest where he may have made use of funds of the estate for his own purposes previously to the time when his accounts are or ought to be settled as aforesaid."

If the accountant had any knowledge of the fact that there was a devisee to whom he should account, the rulings of this court are abundant and sufficient to mark out his duty. Walthour v. Walthour, 2 Grant, Cas. 102, ruling on § 176.

But in this case it is entirely different. The testator and the testator's agents managed to keep the accountant in the dark as to the real state of things by directing him into another channel

than that which the law now lays upon him as his duty in his official position. Therefore the devisee should be estopped by the misleading acts of the testator and his agent, George B. Brown, from claiming interest during that period of time from the death until the registration of the will and notice of same to the accountant, which was on the 25th of May, 1884. Reel v. Elber, 62 Pa. 308, 1 Am. Rep. 414.

The testator, Abbott L. McGeary, as set forth in Henry S. McGeary's testimony, gave the accountant verbal direction on his death bed to whom to give certain property, and to give money, $5,000 in money, to Kate, the claimant, as a present, and other requests, in substance telling the accountant that he would be required only to account to the heirs at law.

But the testator, Abbott L. McGeary, as shown in the testimony of George B. Brown, shows that George B. Brown acted as his trusted agent, and by request of the testator took custody and held the will back from record until the account was filed, for the period of three years and four months, for the express purpose of catching the administrator or accountant, as requested by the decedent. The power of the law should be exercised in such a case as this to stop interest, at least under such circumstances as arise in this case. Notwithstanding all these facts, he keeps to himself and friend the fact of the will, and, under his stirring, the administrator files an account on April 21, 1884, and on the following day, April 22, 1884, as shown by the receipt of Marshall H. McGeary to Henry S. McGeary, he receives from the administrator of A. L. McGeary one third of all the personalty, except the balance set out in the receipt that distributor took away from him, and reduced the $1,124 to $15, and the personalty to certain items.

"A principal with constructive notice of a fact known to his agent is affected, if such knowledge has been acquired in the course of the transaction." Bracken v. Miller, 4 Watts & S. 102.

A principal is not affected with constructive notice of a fact known to his agent, unless such knowledge was acquired in the course of the agency. It is only during the agency that the agent represents and stands in the shoes of the principal; notice to him is notice to the principal. Houseman v. Girard Mut. Bldg. & L. Asso. 81 Pa. 256.

It was held in the following cases that to constitute an equitable estoppel it must appear that the party made an admission

clearly inconsistent with the evidence he proposed to give, that the other has acted upon the admission, and that he will be injured by allowing the truth of the admission to be disproved. Eldred v. Hazlett, 33 Pa. 307; Helser v. McGrath, 52 Pa. 531; Reel v. Elder, 62 Pa. 308, 1 Am. Rep. 414.

No one can set up an estoppel who has not been affected by the act which constitutes the estoppel. Miles v. Miles, 8 Watts & S. 135; Brubaker v. Okeson, 36 Pa. 519; Troxell v. Lehigh Crane Iron Co. 42 Pa. 513.

An estoppel can only be pleaded by one who has been adversely affected by the act which constitutes it. See Cuttle v. Brockway, 32 Pa. 45.

Between an executor and legatees a case is to be decided upon a more liberal view of his discretion than as against creditor. Bruner's Appeal, 57 Pa. 46. See also M'Nair's Appeal, 4 Rawle, 148; and Re Bosio, 2 Ashm. (Pa.) 437.

So long as an executor manages the estate in accordance with the idea which the testator himself entertained of it, and does nothing but what there are reasons to believe he would have approved, it seems the executor is not responsible for loss to the legatees. See M'Nair's Appeal, 4 Rawle, 148.

Where an executor had acted judiciously and in good faith his acts will be approved by the court. Curran's Estate, 1 W. N. C. 361, 32 Phila. Leg. Int. 134; Derbyshire's Estate, 81 Pa. 18.

On the question of what is presumptive evidence the supreme court laid down the law in the case of Philadelphia City Pass. R. Co. v. Henrice, 92 Pa. 431, 37 Am. Rep. 699: "A reasonable and natural deduction from a fact."

A presumption should always be based upon a fact, and should be a reasonable and natural deduction from such fact. Douglass v. Mitchell, 35 Pa. 443.

Amendments are allowed by acts of 1834 and of 1873. Held, in the case of Com. v. Bryan, 8 Serg. & R. 128: "An administrator may file an additional inventory to correct errors in the original one."

Mistakes are allowed to be corrected. A settled account is not conclusive. Tennent v. Dewees, 7 Pa. 305.

On the question of possession of a paper, this court held, in Gibson v. Lenhart, 101 Pa. 522: The transferee of a coupon bond is presumed to be a bona fide holder for value. Being

negotiable securities, every transfer of the bonds to a new holder for value and without notice would give the latter a good title to them as against the former holder. That such is the status of coupon bonds similar to those in question is too well settled by recent decisions to admit of any doubt. Beaver County v. Armstrong, 44 Pa. 63–69; Murray v. Lardner, 2 Wall. 110, 17 L. ed. 857; Douglas County v. Bolles, 94 U. S. 109, 24 L. ed. 47; Entriken v. Brown, 32 Pa. 364.

There was no evidence offered or proof of any fact that in any way weakens the accountant's title by possession. There were no marks on these vouchers to show any facts to base a presumption that they ever were out of the possession of the accountant, H. S. McGeary, or ever were in the possession of the decedent, A. L. McGeary. All inferences should be drawn in favor of the honest possession that was found in the accountant, H. S. McGeary.

In this case the judge should have held the ruling in the case of Bracken v. Miller, 4 Watts & S. 102: "If a promissory note of a testator be found among the papers of his deceased executor, it is presumptive evidence of payment by him."

*Marshalls & Imbrie,* for appellee.—Under the act of February 24, 1834, the administrator *d. b. n. c. t. a.* is bound to look after and obtain the whole of the assets, whether in the hands of his predecessors, their representatives, or of others; and to him the creditors, legatees or distributees must look. Drenkle v. Sharman, 9 Watts, 489.

Neither the heirs at law, legatees, nor distributees have any standing to enforce collection against the original administrator. Com. v. Strohecker, 9 Watts, 479, and Weld v. M'Clure, 9 Watts, 495.

The assignments of error are, to say the least, vague and unsatisfactory, but seem to be intended to raise two objections to the decree of the court below; 1, to the surcharge of interest; 2, to the disallowance of the claims against this estate.

It is not disputed that the administrator used the trust funds in his own business, mingled them with his own, hypothecated trust stocks to secure private loans, and applied the proceeds, not only of the income of the estate but also the corpus of the estate, to schemes for his own pecuniary advantage. Fox v. Wilcocks, 1 Binn. 194, 2 Am. Dec. 433; Biles's Appeal, 24 Pa. 335.

The eighteenth section of the act of March 29, 1832 (1 Purdon's Digest, 445, pl. 192), provides that "the amount of interest to be paid, in all cases, by executors, administrators, and guardians shall be determined by the orphans' court, under all the circumstances of the case; but shall not, in any instance, exceed the legal rate of interest for the time being."

This court will therefore assume the entire correctness of whatever the learned court below said about the evidence, which does not appear in the paper book. Joyce v. Lynch, 1 Sad. Rep. 275.

The books are full of cases holding uniformly that the use of trust funds by an administrator, for his own purposes, is a peculiarly and grossly flagrant abuse of the trust, and he can never evade at least the responsibility for interest. Clauser's Estate, 84 Pa. 51; Conrad's Appeal, 11 W. N. C. 521; Norris's Appeal, 71 Pa. 106; Robinett's Appeal, 36 Pa. 174; Williamson's Estate, 18 W. N. C. 139.

The court below gave the appellant the benefit of every presumption, and held the appellee to strict legal proof. The vague and unsatisfactory way in which the administrator kept his accounts was even urged as an excuse and defense.

Large sums were collected from the mortgages and sales of stocks. The first and final account filed shows that the income from interest and dividends during the first year was over $2,000; during the last year less than $500; yet a commission was allowed upon the surcharged amounts and counsel fees for the preparation of an account, which the court wholly discarded by its decree, and even commended it as the duty of the administratrix to claim credits on the papers, when this court has repeatedly condemned the practice of blending administration and distribution accounts. Jones's Appeal, 99 Pa. 124.

An administrator is not different from any other debtor. He must pay to the legal creditor. The act of 1834 has pointed out the way by which an administrator may protect himself in the distribution of an estate. Musser v. Oliver, 21 Pa. 367.

If an executor or administrator assumes to decide who the next of kin are, and in what proportions the estate is to be distributed, he is personally liable if he makes a mistake. Carter v. Trueman, 7 Pa. 315.

The settlement of an administration account is necessary to protect creditors, as well as next of kin; and no agreement by

the latter with the executor or administrator can bind the former or release the latter. Bloom's Appeal, 15 Pa. 403.

A former statement of facts under oath, contrary to those subsequently set up, is conclusive unless satisfactorily explained, and the burden is upon those seeking to avoid the effect. 1 Greenl. Ev. §§ 184, 210; 2 Wharton, Ev. § 1082.

PER CURIAM:

The decree of the court below is affirmed and the appeal dismissed, at the costs of the appellant.